The first case this morning is 522-0254 Totten, etc. v. Burgener, etc. Arguing for the appellant is James Myers. Arguing for the appellee is Kara Wade. Each side will have 15 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning. Good morning. Mr. Myers, if you're prepared to go, you may begin. Thank you. May it please the court. Counsel, my name is James Richard Myers, and I represent Billy Burgener in this matter, who is the appellant. On appeal, Mr. Burgener has raised three issues. I'm going to address those here today in reverse order as they appear in our brief, and if at any time the justices have questions, I'd be happy to answer those. But the first issue I want to address today is the Uniform Partition of Heirs' Property Act and its application to this case. This issue is before you under statutory interpretation, which means that the standard of review is de novo. I also, as you all may know, the Uniform Partition of Heirs' Property Act is relatively new. It's relatively new in all the jurisdictions it's been enacted in. There's about 20 or 21, and I looked when I did my brief, and I looked the other day, and I don't find any case that addresses really in any way the issue that we've raised today about interpretation of that statute. I wish I could find one, but I haven't been able to do it. The facts that apply to this particular argument are undisputed and are in the record. The Uniform Partition of Heirs' Property Act became effective August 23rd, 2019. The complaint in this cause was filed after that, September 5th, 2019. So the act was in effect, and in her complaint, Carolyn requested a division of property, and if any part thereof cannot be made without manifest prejudice to the parties, the same or such parts that cannot be divided be sold. That was in her verified complaint back in September of 2019. Was there a subsequent pleading? There was a amended counterclaim to be filed by Carolyn, and she in fact did that. In that amended counterclaim, she changed her prayer for relief to take out the fact that she wanted the sale. We objected to that portion of it and ruled, and so there's an amended claim on file. Our position is, A, that the verified pleading is already a judicial admission. It can't be changed, and B, even if it is changeable, the statute says if you requested, if any party requested a sale, requested a sale, and so whether she changed it or not, she actually requested a sale in her initial pleading, and so under the statute, because she requested a sale, the buyout provisions, Section 7 of the Uniform Property Act would still apply. Your position is that even though she's filed an amended complaint, that amendment, which would normally supersede anything that it follows, it doesn't have that effect in this case? Again, I believe that the first pleading was verified, and so then those things become judicial admissions and are part of the record for a further amendment to a pleading, but second, I don't think that the fact she changed it matters, because the statute reads if any party requested a sale, then the buyout provisions apply, and whether she changed it or not, she originally requested a sale. Back to what I was saying then, the month order, March 7, 2022 is when the parties, I'm sorry, March 3rd of 2022 is when the parties finally entered an agreed order as to value, and if you read the statute, that's when the Section 7 buyout provisions become triggered. Once the parties agree to value, or the judge determines the value, or the value is determined through commissioners, however that's determined, the time we look at is the date that the value becomes part of the record, and that's what happened on March 3rd, and thereafter we requested that we be given this notice to buyout and were denied. On that, the statute doesn't contemplate any further notice to anybody. The values are set, and then the buyout provisions are triggered. There is no set the value, and then ask everybody again, or ask anybody for the first time whether they want a sale or not, but it says once the values are determined, Section 6 is under Section 7, if any party requested a sale, then those buyout provisions are triggered, and the buyout provisions would apply. I'd like to move on to the second issue, both today and in the order in the brief, and that's Marlon Bergerner's will and the interpretation of it. A portion of this property subject to this case came to the parties through Marlon Bergerner's will, and Marlon Bergerner's will contained provisions related to buyout provisions, partition, and farming, and again this issue comes to you under a will interpretation, which is a de novo review. In the trial court, the trial court simply issued an order after hearing argument that said this language is precatory and doesn't restrict partition, no explanation, no nothing, so we have no idea what the trial court was looking at, but it appeared that to me, anyway, that they were looking at the single sentence, which is, it is my desire that no partition of my real estate shall be made during the lives of my said nephew and niece, the nephew and niece being the parties here, Billy and Carolyn. And the court interpreted that word desire to mean that it was a wish and not a requirement of his, hers, correct? Assuming that, the order didn't have explanation, just said it was brief, sets that out in some detail, do you have a response to that? I do. I see, as a matter of fact, that if this was the only sentence in the will, it is precatory, but this is not the only sentence in the will, and one of the elements of, or one of the factors in interpretation of these wills is that the testator's intent be fulfilled and that no portion of the directives be rendered moot. And so, if you look at this in the context that it's in, there's, this paragraph is the last sentence of a paragraph that describes a vision where one of the parties can buy out another party, should they ever want to sell, which is basically what partition does, and then they're then following that is this precatory sentence, which we believe that you interpret that whole paragraph, it clearly shows an intent that if either of these parties wants to dispose of their interest in this real estate, then they have a mechanism to do that. And if you say that this sentence then makes it so that you can just have a partition, then there's, those provisions have no effect, because you'll file a partition and there'll be a sale or a division of kind, and the buyout provisions are meaningless. Further, we say that the following paragraph allows Billy or Carolyn or any family member to farm if the other family members don't farm. And again, that's rendered moot if there's no partition. And in fact, there's no advantage to a partition if, after the fact, Billy Bergener's, because that, there's clearly not precatory that sentence, so Billy Bergener's the right to farm this land should Carolyn wind up with it. And so that those two sentences and the two paragraphs together show an intent that this not be partitioned and that if one of the parties wants out of the, they have that being the mechanism set forth. I would also note that the Indiana case that's cited by the Dwyer versus Allen, cited by Appelli from Indiana, has the same sentence. And again, I'd concede if that was the only sentence in there, I desire that my property not be partitioned. But that will, if you look at it, has a paragraph before that sentence that talks about Bob gets this three acres and Niece gets this and, you know, little Joey gets another life estate and it basically divides the property up and then says, I don't want to partition. That's a wholly different circumstance where we have, we have a paragraph that says, if either of these people want out of this co-tenancy arrangement, they have a means to do that. They can be bought out by the other at this price and this formula, followed by the sentence, it is my desire that the property not be partitioned. And we think that's different because we read that whole paragraph. It is clear that Marlon did not want a partition. What he wanted should these desire to get out of a co-tenancy is that this bio provision be followed. So correct me if I'm wrong, I may, I may have this confused with another similar case that we have on the docket today, but I think the Appelli's brief set out a string of citations for cases that interpret, you know, that precatory language. Do you, do you recall that? I don't recall that. That doesn't mean it didn't exist, but again, I don't have a dispute. You know, these are all different cases. Every will's written, you know, case it says how to interpret a will written like this. We have general rules. And I, again, I agree that if the only sentence in the will was I desire that my part, my property not be partitioned, that's precatory, but this follows a detailed buyout provision that allows these people to sever their co-tenancy should they choose to and avoid. And so we believe that if you read that in context, that there was no desire that this be partitioned on the part of Marlon, which is what we're supposed to determine Marlon's intent. And that buyout provision, the two or three sentences about the buyout are rendered meaningless. If a partition is allowed, because nobody would do it, but they would simply say, I'm not doing that Marlon, even though you set that off for me, thank you. I'm just going to file for partition and avoid the whole thing. And I, and I apologize. I didn't mean to throw you off there. I'm looking at the police brief. Now there's, there's two sites that deal with the precatory language. One being a fourth district case, and then the other being the one you a long line of cases cited, it was just two. So I apologize for if I threw you off on that. No, you didn't throw him. Thank you. Thank you for clarifying. I'd like to turn if I could to the last issue we have on appeal, which is the distribution issue. The trial court, this is a issue that you have to review on a, on a manifest way to the evidence standard. The record shows that evidence submitted on the value of four or five parcels as a whole hearing was held before any suggestion was made that the trial court may split those parcels up. The trial court then split parcels up by severing eight acres out of approximately 117 acres and saying that that should go to the other party. And they, the trial court placed a value on that. And we've some work that there is, and we submitted to the trial court, but there's no basis for the valuation of that eight acre severed property. You can't just take eight acres, 17 and, and say that, you know, that's the value that that doesn't work. You have to look at the actual eight acres and determine what its value is. And even today, the parameters of that eight acres aren't established. There's a rough description of it in the trial court's order, but it's never actually established. And I don't know how you would even have someone value a eight acre parcel that we don't know the boundaries to yet. And so without, without evidence of value for the acres, the trial court has to be against the manifest way then because there isn't. So there's, there's no indication in the record anywhere that the trial court assigned a value to, to those eight acres based on some formula, some, some appraisal or anything of that nature. Not to my recollection, my order says I assign a value of $4,200 an acre to this parcel, which is actually, it's actually a different number than if you just took the amount of acres and divided it by, or the total value divided by the number of acres, it's actually different from that. And so I don't have any way to tell you how the trial court determined that. Assuming that their valuation of the, of those eight acres was accurate. Overall, it looks like the trial court tried to divide it monetarily so that both parties were close to equal. And you're suggesting that that was not the intent of the, of the, of the operation. Is that correct? Uh, our position is that this is also against the manifest way to the evidence to give Carolyn the 40 acres that was given to her because it would, it would invite future litigation. Uh, it is across the street from Billy Bergener's farm operation. Uh, and it has many common boundaries with other property owned by Billy Bergener. Uh, and he's the farmer and she's not. And so it doesn't make any common sense to give her that property when there's other properties available. Plus there's another track of real estate. That's exactly equal to what Billy Bergener got. That's what this will set that Billy Bergener gets this track. Carolyn gets another track to really sit or money of the same value. And there's a track that's exactly equal in value. I don't know why you wouldn't give her that track, but again, I'm not the trial court. Um, and, but I do think that the trial court is correct that we need an equal value of all the assets and his order does do that in the long run. But the, the fact that the eight acres is valued with no basis makes it against the manifest way of the evidence. Okay. Um, Mr. Myers, I know I've asked several questions. I know your time is up. So you want to just give a very, very brief closing statement and then you'll have time and rebuttal. Uh, your honor, I'm good. I think I've explained my position and you can move on and I'll just save it for rebuttal. I appreciate that. Thank you. Uh, judge McKinney, judge Welch. Do you have any questions for Mr. Myers before we move on? No questions. All right. Thank you. Uh, Ms. Wade, whenever you're ready, may it please the court and counsel. Um, I'm going to actually address the issues kind of in the opposite order of Mr. Meyer. Um, I would initially point out just as a housekeeping matter that, um, I had filed a motion to strike the reply brief filed by the appellant. Um, there's been some issues throughout this appeal with the appellant actually complying with the rules that govern the appeal. His initial brief was late. He didn't seek an extension in time. This court still graciously allowed him to file the brief, even though the extension was not timely. However, they did issue an order basically indicating that he needed to follow the rules of the Supreme Court. Um, and then we get to the reply brief and again, it's not the, the, the brief is not timely. It's filed a week late. Um, there's no motion for extension or leave of the court to file the late reply. And, uh, therefore I, I felt like it was necessary to bring that to the court's attention and ask that it be stricken in response. Uh, the appellant has filed a now pending motion for extension. I would, I would indicate that after being admonished that the rules matter and they need to follow them, they should have done what they need to do. And so I would ask that that reply be stricken. All right. We'll take that into consideration when we make our, uh, ruling on the case. Thank you, judge. Uh, now moving to the merits, uh, first talking about the distribution plan under Mary, there's a lot of, uh, in words in this case, we got Mary, we got Marlon, we got parties in this case. And through her trust, um, it does require an equal distribution. It required that Billy received a particular tract, which is where he lives and his farm is located on it. And then it said, Carolyn was supposed to receive an equal value of tract or money. And then everything else was supposed to be divided equally. And that's exactly what the court did here. Um, it did divide everything quickly. Uh, Justice Barber pointed that out. Um, and, and Mr. Myers argues that Carolyn should have got the $183,000 acre that was, or excuse me, $183,000 tract. And she did as part of the distribution, the judge did get for that. Um, just what's the other track that is of equal value to what, what the brother got? Um, judge, I actually have the order in front of me. I can tell you there were, there were five tracks total, uh, according to the Bergner appraisal. So she, Carolyn received tract one, which is the inequal value, um, and tract two, tract 3A, which is the one that's really in contention here. And then the, the, the eight acre parcel tract four, which is also an issue. Um, so the, how the judge arrived at the analysis is that he gave her the, the larger value tract 3A, the portion of that, that equaled value of the tract that Billy got, and then awarded her the remainder of that value as part of the equal distribution. So, I mean, it's really neither here nor there. I mean, the, the, the end result is the same. And certainly there's no prohibition of the trust to divide anything out or how there's no prohibition. There's no instruction. It just says equal. Um, and, and the court complied with that, the settler's intent, whenever he came up with this distribution plan. Now I'm making these assertions, Judge, but in reality, it's kind of hard to tell exactly what the court considered, not hard, almost difficult because the appellate did not provide a record here. Um, there was an evidentiary hearing on February 11th of 2021. Um, evidence was presented. There's no transcript of this proceeding. There's no bystanders report. I wasn't involved in the proceeding at that time. So I can't even tell you what really happened. I'm flying blind, just like the court is, and that, and that's a problem. Um, the rules require that an adequate record be provided for this court to consider what evidence the court considered, the trial court considered, and there's no record here. Um, under the case law cited in my brief, the Fouch versus O'Brien case is a Supreme Court case. Um, in the absence of a sufficient record on appeal, it is presumed that the order entered by the trial court was in conformity with the law and had a sufficient basis. Um, thus in the absence of a transcript or bystander support, the review court must assume the trial court heard sufficient evidence to support its decision unless the record indicates otherwise. We don't know the record. Um, Mr. Myers just made several statements about, you know, inviting litigation and three A's located across from three B. I'm assuming those, those issues were addressed in the testimony provided by Carolyn and her husband, Doug, and perhaps the testimony provided by Billy, but we don't know because there was no transcript. There's no bystander's report. Um, I don't know what they testified to, and neither does this court. Uh, so we don't know the evidence that the, the trial court considered. Um, however, if you look at the docket, I agree with Mr. Myers, there were appraisals filed. Um, it's clear from the order that the court adopted the appraisal submitted by, uh, Carolyn, the Bergner appraisal, because it was done at the time of Mary's death. Um, so he did take the value, and Mr. Myers is correct. The value that he used for that eight acre parcel is a little higher than the appraised value, but there's reasons for that. Tract four is mostly wooded. Um, the portion that's given to Carolyn is tillable, so it has more value to it. The reason that was given to her is because tract one is located adjacent to tract four and is farmed with that eight acre piece, so about eight acres. Um, so it's farmed together as one tract, so that's why the court wanted to keep it together. That's reasonable. Again, though, you can't really make, I know that because I'm familiar with the case now. There's nothing in the record for this court to look at to really determine these things because the appellate didn't provide it. So I'm, I'm, I'm, I'm telling you that this is why the trial court did what it did, but there's no transcript. There's no bystander's report. Um, therefore, the appellant has a burden here, and he didn't provide a sufficient record for this court to really consider the arguments that he's raised with respect to count one. So I would ask that the trial court on that basis alone be affirmed, but also for the reasons I discussed, if you look at the appraisal that is part of the record, it does talk about the wooded nature of tract four and why the court arrived at a little higher price for that acreage, um, because of the tillable nature of that ground given to Carolyn. Is that just, in your opinion, is that just the trial court making an assumption, uh, playing, uh, uh, uh, you know, amateur appraiser on what farm ground is worth there? Judge, I wish I could tell you. I don't know the evidence that was presented. I know that, uh, Carolyn and, and her husband, Doug, who are very familiar with the properties, provided testimony explaining the values that they thought, uh, would have had. I assume that Mr., uh, Mr. Bergner provided similar testimony, but I can't tell you. There's no transcript. There's no bystander's report. I'm not exactly sure what was told to the judge, and neither are you, because there's no transcript. There's no bystander's report. So, um, those are things that my prior counsel, who's now state's attorney for our county, told me those things were told. I assume those things were told to the judge, but I don't know. I can't prove it one way or the other. So, that's why, I know I'm making a big deal of this, but it is a big deal. I mean, there's no record. How are you supposed to decide something when there's no record? Um, so I would ask that, again, because the, the appellate has not met his burden, uh, that the trial court order with respect to the distribution be upheld. Um, turning quickly to the, the second issue, the interpretation of Marlin's will, um, I want to point out that, uh, Mr. Myers characterizes, uh, the language in Mr. Marlin's will as, as saying that if they wanted to, uh, to defeat or overcome the joint tenancy, that's not what's said in the will. The remainder of talk about it. They want to sell their interest. They want to sell their interest. So, there's some mandatory language in there about if you're going to sell it, if you're no longer going to own it, if it's going to go outside the family, you have to offer it to one another. That's, that's reasonable. The language about the partition is preparatory because it's still keeping the farm in the, in the, in the family. They're just dividing who owns it. Um, it doesn't mean it's being sold. Uh, and, and I'll get to the third topic, but Carolyn has never asked for this to be sold. She doesn't want to sell it. She wants to keep it. No, no, let's, let's stop there. What did she ask for in her prayer for relief in her first amendment or her first complaint? Well, judge, I, Mr. Myers touched on that and we're kind of skipping ahead, but, um, the original complaint was filed under the general partition act. It's in the code of civil procedure and the standard language from the partition act is an alternative relief request. It's, I want to divide it in kind, which was her request. I want to divide it in kind, but in the alternative, if it cannot be divided, then the court can sell it. So it's an alternative. Is it a requirement for the alternative, uh, to be, to be pled? It's standard language from the partition act judge, from the, from the, standard or not, is it, is it, uh, required to be in there? I mean, is it, is it a, uh, a problem if it's not in there? I don't believe so. I believe you can pick one or the other. Um, here though, and if you had an adequate record in front of you, no judge, Carolyn has never, ever really wanted to sell this property. That's just, that wasn't a prayer for relief where as attorneys, we include that language because that's what we included with every partition action. That's not her actual desire. And she's testified about that numerous times in this case, and she's indicated it in numerous hearings. I don't want to sell the property. I want to be, I want it to be partitioned in kind. If you had a record in front of you, you know that. Um, and again, it's an alternative and, and, and he's ignoring the fact that the alternative hasn't been met. It's only if you can't partition it in kind, this can be partitioned in kind. And again, as you pointed out, going to that issue, um, we amended, we replaced that whenever we figured out, oh, the heirs property act is new. It's a, it's a new law. Um, we, uh, we filed a new amended account to, to comply with the requirements of the heirs property act. And we removed any reference to a sale. And we did that before any buyout rights are triggered under the act. So first of all, it's withdrawn. So it's no longer there. That's the first issue. So we've withdrawn that to the extent it was a request. It's not a request. She, she's throughout this entire case has said, I want to be partitioned in kind. Um, and then to the, as Mr. Myers pointed out, there's not a lot of case law on this. So there's no prohibition on the act that initial requests can't be withdrawn or rescinded. Um, to the extent it's considered a request, which I don't agree it's a request. It was an alternative, uh, prayer for relief, but, um, to the extent that it was a request, it was withdrawn and it was rescinded before any buyout rights were triggered under section six of the heirs property act. So it's just that the argument he's trying to, he's definitely trying to force to sell this because then the provisions in Marlin's will are triggered and she stuck with that $1,500 neighbor. So that would not, that just right there supports the idea that this would not be reasonable for Carolyn to do it because she'd have to sell it for a bare bones amount. She never wanted to partition it. That was just language in there according to the initial partition act, and it was replaced and withdrawn. So that's why that argument fails. Going back to Marlin's will again, the, the provision at issue it's, it's predatory because she's not wanting to sell the property. She's wanting it to be partitioned. And the particular, um, language is, it is my desire, the no partition of my real estate shall be made during the lives of my son and niece and nephew. And when you compare that with the language, uh, that Mr. Myers points out relating to the cell, it only clarifies and confirms that it's predatory versus mandatory. That has language like shall and cannot. Um, this has, it is my desire. Those, those are different. And that I'm going to butcher this case's name, the fourth district case, the stickage, stickage, uh, C I C K Y J case, uh, 93 L F 3 D 5 56. And, uh, the fourth district, it has similar, uh, desire language. And the fourth district found that that was predatory and not mandatory. How do you, how do you respond to, uh, uh, Mr. Myers argument with regard to, you know, when you take into that sentence in, in context with the rest of, uh, of the, the will, what, what else do we have that supports, you know, partition is something that is desired in any way? Well, I think I was mentioning. So the other portion that he's asking to look at are these, this prohibition or these kind of first option rights, if they want to sell, sell the property. And it says that if you're going to sell it, you have to offer it to one another for a bottom dollar price of $1,500 an acre. And that's not what's being requested here. They're not asking to sell a property. They're not taking the property outside the family, which is evident that Marlon's intent was to keep the farm in the family. Um, they're asking that they be simply divided. And it may be true that Carolyn has to allow Billy to farm the grand when she, when she finally owns it individually, but that doesn't mean that it shouldn't be partitioned. I mean, clearly this is only, this is only until they, they pass Billy and Carolyn. And so future generations would have to be dealing with this. And there's no reason why, uh, this predatory language, uh, would prevent them from going ahead and now, uh, for, for her future children. So they don't have to deal with this. Um, so it's, it's again, that talks about selling. She's not selling. She's partitioning. She's simply dividing out. And there's no evidence by the way, that they can't be, uh, divided in kind. Um, it absolutely can. Uh, so to, to the extent that the other language is considered by this court, it's only, well, first of all, I think I've said it already. It does have mandatory language. So it is mandatory versus predatory. But secondly, it talks about sale. It doesn't talk about ending the co-tenancy as in, you know, you're getting ready, you're getting it out of the family. It just talks about if you're going to try to sell it, this is what you have to do. Um, so the partition, you're not taking outside the family. You're just having family members own it individually. Um, does that address your question judge? Yes. Thank you. So just in sum, I, I, I believe that none of the, the trial court got all three of these issues, correct. Uh, there's, there's a little record for this court to confirm that. And that is based on the failure of the appellant. And as a result, uh, the child court's orders should be appealed. All right. Thank you very much. Uh, Mr. Myers, do you have time and rebuttal or reply? I should say. Uh, thank you. Um, I just have three quick points that I'd like to make and probably won't even use the whole time. Okay. Well, let me, let me direct or just ask you to, to address, um, what council pointed out is some failures with regard to the briefing, the timing and the record in this case. Yes, Your Honor. Uh, it is true. We didn't file our brief in time. We did request our original brief. We did request an extension and received that gracefully. Um, and I believe that's common. I know I failed to request the extension before the brief was due, but it's common to give extensions. And then on the reply, as I said in my, in my filing, that was my fault. Uh, I miscalendered the wrong day off by a week. And, um, that's what happened. I don't have an excuse other than that. Uh, the reply only addresses two of the issues, of course, and it's true whether I filed the reply or not, um, that, uh, those things are true. And I don't believe any prejudice came in based on my one week, uh, failure. That's, that's my response to you. And, uh, in regard to the, uh, the lack of record for us to review this case with. Yes. Um, there was no court reporter at the, uh, uh, evidence you're hearing, uh, that took place about, uh, before the trial court that made the ruling. There was an evidence you're hearing before a prior judge, which the transcript of that is in the record and miss, uh, Carolyn herself testified about where Billy lived and where these properties were located. Uh, there is evidence in the form of exhibits showing you where they are and what properties are by them. Uh, so there is evidence in, in the record of those things. And then the important thing to look at in this case, as far as the eight acre issue that we raised is that both appraisals are in the, in the record and no appraiser testified. So, I mean, the, the, the evidence of what those appraisers had to say is right before you, there was nothing else said by those appraisers. Uh, and both parties submitted, uh, if that asked for division of the property by track, no party suggested that any of these tracks could be divided or should be divided in smaller parts that only came after the evidence you're hearing that we don't have a transcript for, uh, when the trial, if there's, if there were no transcript because of, you know, not having a court reporter, isn't it? Uh, you're, you're able to file a bystander's report. That's correct. But my, my suggestion is that the evidence that you need, uh, is in the record, regardless of this mission of a bystander report, uh, in the fact that those requested the vision of these tracks. It was only after the evidentiary hearing that judge, the trial court suggested that it could be, uh, divided up. And so there would be no opportunity or reason to have any evidence of what a sub plus the track we're talking about. Isn't even defined yet. I don't know how you would ever have evidence of value attract. That's not defined. Uh, so I that you have, you don't have a transcript of that hearing, but you have ample evidence in the record already that those appraisers testified exactly how they testified in their submitted appraisal because they never actually did testify and that the judge created this scheme of division after, uh, the evidence you're hearing. And that's the first time that any, um, suggestion that I did came about. Um, it is simply untrue that Carolyn never requested a sale. She did in a verified pleading. She filed in the case. She didn't have to request a sale and she did. Uh, yeah, you know, whether she wants to believe she didn't want to sail or not, there's a pleading on file under her verified signature that requests a sale. Uh, if the property can't be divided in kind and that under the old partition act, which still exists, which is the only partition act that was around when Marlon did this will, it is simply not true that if you file a partition, it's going to remain in the family. If you file a partition act, uh, action under the old rules and there was no possibility that it could be divided in kind, uh, it went to a public sale, uh, where anybody could buy it, uh, family member or not. And so it would make perfect sense for Marlon to provide a way that a co-tenancy can be severed that keeps the property in the family, which was his intent and say, we can't have a partition because a, I've already created a way that these tenancies can be severed. And B, if we have a partition under the old act, uh, it is entirely possible that there's a public sale and outsiders buy. That was really the, the, the, the harm that the new partition act, the heirs property act was intended to fix. Uh, and, uh, I see my time's expired. Thank you. Okay. Any questions, uh, judge McCain, justice, uh, well, no questions. Okay. Thank you both for your arguments today. Uh, court will take the matter under consideration and issue. It's a ruling in due course.